## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SENTINEL CONNECTOR
SYSTEMS, INC.

Plaintiff,

v.

NSI INDUSTRIES, LLC,
NSI HOLDINGS, LLC,
SENTINEL CAPITAL PARTNERS,
G.R. SCHROTENBOER, an
Individual, and
DAMON ANDERSON, an Individual,

Defendants.

Case No.

**JURY TRIAL DEMANDED**

## PLAINTIFF SENTINEL CONNECTOR SYSTEMS, INC., FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT

Plaintiff, Sentinel Connector Systems, Inc. ("SENTINEL" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against NSI Industries, LLC., and NSI Holdings, LLC., (collectively "NSI"), Sentinel Capital Partners ("SCP"), G.R. SCHROTENBOER, an individual ("GR"), and Damon Anderson, an individual, ("ANDERSON") (collectively "Defendants"), for infringement of Sentinel's federally registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); for unfair competition, false designation of origin, and false representation of fact under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for false designation of origin, false or misleading description of fact, or false or

misleading representation of fact under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); for substantial and related claims of deceptive trade practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law,  (73 P.S. §§ 201 et. seq.), breach of contract and conversion.

## PARTIES

1.      Plaintiff, Sentinel Connector Systems, Inc., is a privately owned Pennsylvania corporation with its principal place of business in York, Pennsylvania.

2.      NSI Industries, LLC is a North Carolina limited liability company with its principal place of business in Huntersville, North Carolina.

3.      Sentinel Capital Partners, LLC is a Delaware limited liability corporations with its principal place of business in New York, New York.

4.      G.R. Schrotenboer is an individual residing in Mooresville, N.C.

5.      Damon Anderson is an individual residing in Huntersville, N.C.

## JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(b) because Plaintiff seeks relief for trademark infringement, false designation of origin, and false representation of fact under the federal laws of the United States, including the Lanham Act, 15 U.S.C. § 1111 *et seq.* Plaintiff's remaining state law claims are subject to this Court's supplemental

jurisdiction under 28 U.S.C. § 1367(a) because those claims are substantially related to Plaintiff's Lanham Act claims and form part of the same case or controversy.

7. This Court has specific personal jurisdiction over Defendants because, upon information and belief, Defendants have intentionally and knowingly transacted a substantial volume of business with a customer located within this District and the causes of action set forth arise from or are connected to those transactions.

8. Venue is proper in this District under 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims occurred within this District.

## FACTUAL BACKGROUND

**I.    Registration and Protection of the "SENTINEL CONNECTOR" Mark**

9. SENTINEL is a nationally and internationally known manufacturer and provider of a wide range of network connection devices and fiber optics.

10. In order to protect its brand and reputation, on April 14, 2000, SENTINEL filed "SENTINEL CONNECTOR" as an in-use word mark with the United States Patent and Trademark Office ("USPTO") for "Modular plugs and jacks" in International Class 0009.

11. The SENTINEL standard word mark was first used in July 1999 and first used in commerce in July 1999.

12.     On May 5, 2002, the SENTINEL standard word mark was registered with the USPTO (Reg. No. 2544107). Exhibit 1, Registration (May 5, 2002).

13.     The U.S. registration for the SENTINEL standard word mark has been renewed and is valid and in good standing. *See* Exhibit 2, Combined Declaration of Use and Incontestability (November 19, 2007); Exhibit 3, Notice of Acceptance (November 28, 2007); Exhibit 4, Renewal Application (October 4, 2011; December 28, 2021).

14.     The "SENTINEL CONNECTOR" standard word mark is referred to herein as the "SENTINEL Mark."

15.     The SENTINEL Mark has become incontestable under 15 U.S.C. § 1065.

16.     SENTINEL is the owner of all rights, title, and interest in and to the SENTINEL Mark.

17.     SENTINEL has continuously and without interruption used the SENTINEL Mark in U.S. commerce since at least as early as July 1999, in connection with all of SENTINEL's goods and services.

18.     As provided in 15 U.S.C. §§ 1057(b) and 1115(a), the certificates of registration for the SENTINEL Mark are prima facie evidence of the validity of the SENTINEL Mark, of SENTINEL's ownership of the SENTINEL Mark, and of

SENTINEL's exclusive right to use the SENTINEL Mark in connection with its business.

19.    Purchasers in the data network and modular jack industries and other industries recognize the SENTINEL Mark as indicative of SENTINEL as the exclusive source of particular goods and services.

20.    By virtue of its use of the SENTINEL Mark and variations of it since at least July 1999, and its marketing efforts and expenditure of considerable sums for promotional activities, SENTINEL has gained a valuable reputation and developed considerable brand recognition in the data network, modular jack, and other industries.

21.    SENTINEL ensures the quality of goods and services sold under the SENTINEL Mark by instituting stringent quality control processes with its subsidiaries and distributors, as well as retention of complete control over the manufacturing and production of goods bearing the SENTINEL Mark.

**II.    SCP and NSI's Infringement of the SENTINEL Mark**

22.    On or about November 21, 2024, SCP purchased NSI.

23.    As part of the purchase of NSI, SCP and NSI issued a press release including NSI's logo and SCP's logo as shown below:

**NSI INDUSTRIES ACQUIRED
BY SENTINEL CAPITAL
PARTNERS**





24. SCP and NSI also placed the above image on NSI's web page and included the image in a press release issued by NSI and SCP.

25. SCP and NSI's use of the mark "Sentinel Capital Partners" on NSI's web page and press releases to the modular connector industry is confusingly similar to the SENTINEL Mark.

26. As evidence of this confusion, in a phone conversation with Simply45, a potential client of SENTINEL, the potential client informed SENTINEL that they did not contact SENTINEL as a potential supplier of products because the potential client believed SENTINEL, not SCP, had purchased NSI and NSI is a competitor of potential client.

27. Simply45's belief that SENTINEL had purchased NSI, a competitor of Simply45, is a direct result of SCP and NSI's use of SENTINEL's trademark on its website and in the press release issued by SCP and NSI to the modular connector market.

28.   At a minimum, this confusion created by SCP and NSI's infringing uses of the SENTINEL Mark resulted in SENTINEL losing sales to Simply45 in the hundreds of thousands of dollars.

29.   NSI and SCP both used SENTINEL's name and logo with full knowledge that the use of the name and logo would cause confusion in the modular connector market and cause SENTINEL financial harm.

30.   NSI and SCP's actions were willful and intentional and resulted in SENTINEL losing business to SCP and NSI in addition to causing confusion in the market.

31.   As further evidence of NSI's attempt to mislead consumers of the origin of NSI's products, after NSI stopped ordering products from SENTINEL, NSI continued using SENTINEL's Underwriters Laboratory ("UL") registration for their products.  Exhibit 6 – UL Registration.

32.   Sentinel's UL Registration Number is E188111.   Exhibit 6 – SENTINEL UL Registration.

33.   NSI falsely marks their products and product literature with SENTINEL's UL registration number as shown below:

  

34. By using SENTINEL's UL registration on their products, NSI falsely claimed that NSI's products had UL approval, when in fact they did not have UL approval. Further, by using SENTINEL's UL registration, a consumer would believe that the products sold by NSI were made by SENTINEL, further supporting SCP and NSI's attempt to attach SENTINEL's goodwill to the products they sell.

35. Further, on information and belief, SENTINEL is the only manufacturer of pull-through RJ-45 plugs in the United States. In 2025, NSI informed SENTINEL that NSI would no longer purchase products from SENTINEL and instead, NSI would order all parts from China. However, NSI continues to falsely use SENTINEL's UL Registration Number and mark their parts as made by SENTINEL in the United States. See, Exhibit 6 – SENTINEL UL Registration.

### III. NSI's Breach of Contract

36. On or about July 26, 2023, SENTINEL notified NSI, via NSI's subsidiary Lynn Electric, that NSI had a number of outstanding invoices in the amount of $640,000.00. Exhibit 5 – SENTINEL/NSI Email.

37. In response to SENTINEL's email, NSI agreed to begin paying down the unpaid invoices.

38. On August 9, 2023, NSI paid $207,085.00 to SENTINEL as partial payment for the unpaid invoices.

8

39.     On August 16, 2023, SENTINEL confirmed the receipt of $207,085.00 from NSI.

40.     On September 5, 2023, NSI's computer systems were compromised by an outside entity, and an email from a third party posing as a SENTINEL employee asked NSI for information on the payment of the outstanding invoices.

41.     The grammar and wording of the email, at minimum, were suspicious as the email stated:

"Can you please let us know when to expect next payment?"
This will guide us in providing you our updated bank account for ACH as we are **closing** the current one.
Do you have the details of when to expect upcoming payments?"

Exhibit 5 – SENTINEL/NSI Email

42.     NSI responded to the email asking the sender if SENTINEL's current account has been closed.  Exhibit 5 – SENTINEL/NSI Email

43.     The sender responded confirming SENTINEL's bank had been closed and sending new ACH information on a letter with SENTINEL letter head.  Exhibit 5 - SENTINEL/NSI Emails

44.     Without performing any verification, NSI transferred $396,006.00 to the new bank account given by the third party.  Exhibit 5 – SENTINEL/NSI Emails

45.    When it became clear that the third party that compromised NSI's systems had stolen the $396,006.00, SENTINEL immediately notified NSI's CEO GR.  Exhibit 5 – SENTINEL/NSI Emails

46.    In response, GR informed SENTINEL that the money had been sent to the account given by the hacker and NSI would not provide any restitution.

47.    After a thorough investigation, SENTINEL was able to determine that the hacker breached NSI's systems and inserted false emails in the email string between SENTINEL's accounting and NSI's accounts payable.

48.    When informed of these facts, GR and ANDERSON again stated that NSI was not at fault and that SENTINEL would have to bear the loss alone.

49.    SENTINEL then reached out to its insurance company to file a claim for the hack.  SENTINEL's insurance company stated that NSI would need to file a claim with NSI's insurer to pay the unpaid invoice.

50.    When informed of this fact, GR and ANDERSON again stated that NSI would not file a claim or pay SENTINEL for the lost payment even though the breach and resulting loss were the result of a breach of NSI's network.

51.    SENTINEL continued to negotiate with NSI through ANDERSON and GR in good faith believing that NSI would pay the money intercepted by the hacker. On numerous occasions, NSI stated they would investigate the situation and inform SENTINEL of the results of the investigation.

52.   These investigations never occurred.

53.   To date, SENTINEL has not received any portion of the monies stolen by the hackers that breached NSI's network.

## COUNT I: TRADEMARK INFRINGEMENT (LANHAM ACT § 32) (NSI AND SCP)

54.   The allegations of Paragraphs 1 through 53 above are incorporated by reference as if fully set forth.

55.   NSI, and SCP have jointly engaged in acts of trademark infringement under§ 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

56.   SENTINEL owns and uses its federally registered SENTINEL Mark in connection with the sale and distribution of modular plugs and jacks throughout the United States and other countries. As properly registered marks, the SENTINEL Mark is presumptively valid and, as a result of the Notices of Acceptance and Acknowledgement of Sections 8 & 15 in both registrations, are also incontestable.

57.   SENTINEL has used the SENTINEL Mark in commerce throughout the United States to identify the source of goods and services it is selling or offering for sale. The goods and services offered or sold by SENTINEL are identical to those provided by NSI.

58.   SCP and NSI's use of the SENTINEL Mark without SENTINEL's consent is likely to cause confusion in the industry in which both NSI and SENTINEL operate.

59.    The SENTINEL Mark is inherently distinctive in the fields in which both NSI and SENTINEL operate, and purchasers recognize the SENTINEL Mark as an indication that SENTINEL is the exclusive source of the goods and services being purchased. The SENTINEL Mark is both commercially and conceptually strong and are not descriptive.

60.    SCP and NSI's use of the SENTINEL Mark is likely to cause confusion because SENTINEL and NSI have the same customer base, directly compete in the same industry, and use the same marketing channels to reach consumers, including trade shows and salespersons.

61.    In appearance, connotation, and overall commercial impression, the SENTINEL Mark used by SCP and NSI are identical to the ones owned and registered by SENTINEL.

62.    SCP and NSI's use of the SENTINEL Mark is not only likely to cause confusion but has also caused actual confusion in the marketplace.

63.    By choosing to use the SENTINEL Mark in connection with its business despite possessing knowledge that the SENTINEL Mark is protected, NSI and SCP intended to create, and actually have created, consumer confusion between themselves and SENTINEL, as well as its products and SENTINEL'S products, with the goal of increasing NSI sales and SCP's profits.

12

64. NSI misappropriated the SENTINEL Mark in connection with the sale of goods and services identical to those provided by SENTINEL, thus creating a likelihood of confusion in the consuming public as to the origin of NSI's goods and services. By using the SENTINEL Mark in conjunction with processing orders for customers located in various states, NSI's actions have had a substantial effect on U.S. interstate commerce.

65. SCP, by issuing a misleading press release incorporating the SENTINEL Mark, led to confusion in the marketplace as to where NSI's products originated.

66. Upon information and belief, SCP and NSI's trademark infringement has been committed intentionally, willfully, knowingly, and in bad faith.

67. As a result of SCP and NSI's use of the SENTINEL Mark, the value of SENTINEL's registered SENTINEL Mark, namely its product identity, its competitive advantage, and the ability to control its goodwill and reputation has been and is diminished and irreparably harmed.

68. SCP and NSI's trademark infringement has damaged, and continues to damage, SENTINEL in an amount not yet capable of being calculated but to be demonstrated at trial.

69. As a result of SCP and NSI's violations of the Lanham Act, SENTINEL is entitled to an award of all damages recoverable under 15 U.S.C. § 1117(a),

13

including, but not limited to, NSI's profits and/or a reasonable royalty, all damages sustained by SENTINEL, and the costs of this action.

70.    SCP and NSI's joint and deliberate actions also constitute an exceptional case that warrants an award of reasonable attorneys' fees in SENTINEL's favor.

71.    SENTINEL also is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 because, unless enjoined by this Court, SCP and NSI will continue to infringe upon the SENTINEL Mark, thereby causing SENTINEL immediate and irreparable damage for which it has no adequate remedy at law.

## COUNT II: FALSE DESIGNATION OF ORIGIN (LANHAM ACT § 43(a)) (SCP AND NSI)

72.    The allegations of Paragraphs 1 through 71 above are incorporated by reference as if fully set forth.

73.    SCP and NSI's use of the SENTINEL Mark is likely to cause confusion or mistake as to the origin, sponsorship, or approval of its goods in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(l).

74.    NSI misappropriated the SENTINEL Mark in connection with the sale of goods and services identical to those provided by SENTINEL, thus creating a likelihood of confusion in the consuming public as to the origin of NSI's goods and services. By using the SENTINEL Mark in conjunction with processing orders for

14

customers located in various states, NSI's actions have had a substantial effect on U.S. interstate commerce.

75. SCP, by issuing a misleading press release incorporating the SENTINEL Mark, led to confusion in the marketplace as to where NSI's products originated.

76. SCP and NSI's misrepresentations and use of the SENTINEL Mark are likely to cause, and already have caused, confusion, mistake, or deception as to the origin, affiliation, connection, sponsorship, or approval of NSI's goods and services by SENTINEL.

77. SCP and NSI's use of the SENTINEL Mark in its advertising and promotions misrepresents the nature, characteristics, and qualities of its goods and services.

78. SCP and NSI's unfair competition and unauthorized use of the SENTINEL Mark has damaged, and are likely to continue damaging, SENTINEL in an amount not yet capable of being calculated but to be demonstrated at trial. SENTINEL's damages include, but are not limited to, loss of potential sales and competitive injury to SENTINEL's goodwill and reputation.

79. As a result of SCP and NSI's unfair competition and unauthorized use of the SENTINEL Mark, SENTINEL is entitled to an award of all damages recoverable under 15 U.S.C. § 1117(a), including, but not limited to, NSI's profits

and/or a reasonable royalty, all damages sustained by SENTINEL, and the costs of this action.

80.    SCP and NSI's joint and deliberate actions also constitute an exceptional case that warrants an award of reasonable attorneys' fees in SENTINEL's favor.

81.    SENTINEL is also entitled to injunctive relief pursuant to 15 U.S.C. § 1116 because, unless enjoined by this Court, SCP and NSI will continue to improperly use the SENTINEL Mark, thereby causing SENTINEL immediate and irreparable damage for which it has no adequate remedy at law.

## COUNT III: FALSE DESIGNATION OF ORIGIN (LANHAM ACT 43(A)(1)B)) (NSI AND SCP)

82.    The allegations of Paragraphs 1 through 81 above are incorporated by reference as if fully set forth.

83.    NSI and SCP's use of the SENTINEL's Underwriter's Laboratory registration is likely to cause confusion or mistake as to the origin, sponsorship or approval of its goods in violation of Lanham Act 43 (a)(1)(B) (15 U.S.C. § 1125(a)(1)(B)).

84.    Upon information and belief, NSI and SCP had a bad faith intent to profit from use of SENTINEL's UL registration. NSI and SCP also chose to list the UL register number owned by SENTINEL with the intent of misleading customers

into believing that the products sold by NSI were manufactured by SENTINEL and increasing NSI and SCP's sales.

85.    In the fields in which both NSI and SENTINEL operate, purchasers recognize SENTINEL's UL registration an indication that SENTINEL is the exclusive source of the goods and services being purchased including the fact that SENTINEL's products are tested and certified by UL. The SENTINEL Mark is both commercially and conceptually strong and is not descriptive.

86.    The use of SENTINEL's UL register number already has caused confusion in the market by leading consumers to believe that NSI and SCP's products are UL protected and produced by SENTINEL.

87.    As a result of NSI and SCP's violation of the Lanham Act 43 (a)(1)(B) (15 U.S.C. § 1125(a)(1)(B)), SENTINEL is entitled to an award of all damages recoverable under 15 U.S.C. § 1117(a), including, but not limited to, NSI and SCP's profits and/or a reasonable royalty, all damages sustained by SENTINEL, and the costs of this action.

88.    NSI and SCP's deliberate actions also constitute an exceptional case that warrants an award of reasonable attorneys' fees in SENTINEL's favor.

89.    SENTINEL is also entitled to injunctive relief pursuant to 15 U.S.C. § 1116 because, unless enjoined by this Court, NSI and SCP will continue to

improperly use the SENTINEL Mark, thereby causing SENTINEL immediate and irreparable damage for which it has no adequate remedy at law.

## COUNT IV: VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (NSI AND SCP)

90.    The allegations of Paragraphs 1 through 89 above are incorporated by reference as if fully set forth.

91.    NSI and SCP have engaged in deceptive trade practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

92.    NSI and SCP's unauthorized use of the SENTINEL Mark in connection with its business has caused actual confusion and is likely to continue to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of its goods or services by NSI and SCP in violation of 73 P.S. §§ 201(4)(iii).

93.    NSI and SCP's unauthorized use of the SENTINEL Mark in connection with its business has also caused actual confusion and is likely to continue to cause confusion or misunderstanding as to its affiliation, connection, or association with, or certification by SENTINEL in violation of 73 P.S. §§ 201(4)(iii).

94.    Through its use of the SENTINEL Mark, NSI and SCP have falsely represented that it has sponsorship, approval, status, affiliation, and/or connection with SENTINEL that it does not have in violation of 73 P.S. §§ 201(4)(v).

18

95.    NSI and SCP's deceptive trade practices have damaged, and are likely to continue damaging, SENTINEL in an amount not yet capable of being calculated but to be demonstrated at trial. SENTINEL's damages include, but are not limited to, loss of potential sales and competitive injury to SENTINEL's goodwill and reputation.

96.    Due to the damage caused by, or likely to be caused by, NSI and SCP's actions, SENTINEL is entitled to injunctive relief as prescribed by 73 P.S. §§ 204.1.

97.    Upon information and belief, NSI and SCP willfully and intentionally engaged in deceptive trade practices with the intention of causing confusion such that an award of reasonable attorneys' fees in SENTINEL is warranted in this case.

## COUNT V: UNFAIR COMPETITION (PENNSYLVANIA COMMON-LAW) (NSI AND SCP)

98.    The allegations of Paragraphs 1 through 97 above are incorporated by reference as if fully set forth.

99.    NSI and SCP, through the misconduct and violations described above, have engaged in unfair competition against SENTINEL in violation of Pennsylvania common-law.

100.    SENTINEL owns and uses its federally registered SENTINEL Mark in connection with the sale and distribution of modular plugs and jacks. As properly registered mark, the SENTINEL Mark is presumptively valid and, as a result of the

Notices of Acceptance and Acknowledgement of Sections 8 & 15 in both registrations, also are incontestable.

101. NSI and SCP have used the SENTINEL Mark throughout the United States in connection with the sale of goods and services that are identical to those provided by SENTINEL.

102. NSI and SCP's use of the SENTINEL Mark without SENTINEL's consent is likely to cause confusion among reasonably cautious consumers in the industry in which both NSI and SENTINEL operate.

103. The SENTINEL Mark is inherently distinctive in the fields in which both NSI and SENTINEL operate, and purchasers recognize the SENTINEL Mark as an indication that SENTINEL is the source of the goods and services which are being purchased. The SENTINEL Mark is both commercially and conceptually strong and are not descriptive.

104. NSI and SCP's use of the SENTINEL Mark is likely to cause confusion among reasonably cautious consumers because NSI and SENTINEL have the same customer base, directly compete in the same industry, and use the same marketing channels to reach consumers, including trade shows and salespersons.

105. In appearance, connotation and overall commercial impression, the SENTINEL Mark used by NSI and SCP are identical to the ones owned and registered by SENTINEL.

106. NSI and SCP's use of the SENTINEL Mark is not only likely to cause confusion but has also caused actual confusion in the marketplace.

107. By choosing to use the SENTINEL Mark in connection with its business despite possessing knowledge that the SENTINEL Mark is protected, NSI and SCP intended to create confusion, and actually have created confusion, between themselves and SENTINEL as well as its products and SENTINEL's products, with the goal of increasing NSI and SCP's sales.

108. Upon information and belief, NSI and SCP's acts which constitute unfair competition have been committed knowingly and in bad faith, such that an award of expenses of litigation, including reasonable attorneys' fees in SENTINEL's favor, is warranted in this case.

109. Upon information and belief, NSI and SCP's acts which constitute unfair competition have been committed with willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, such that an award of punitive damages is warranted in this case.

110. As a result of NSI and SCP's use of the SENTINEL Mark, the value of SENTINEL's registered SENTINEL Mark-namely its product identity, its competitive advantage, and the ability to control its goodwill and reputation-has been and is diminished and irreparably harmed.

111. NSI and SCP's unfair competition has damaged, and continues to damage, SENTINEL in an amount not yet capable of being calculated but to be demonstrated at trial.

112. NSI and SENTINEL's infringement upon the SENTINEL Mark and unfair competition has damaged, and is likely to continue damaging, SENTINEL in an amount not yet capable of being calculated but to be demonstrated at trial.

113. SENTINEL is also entitled to injunctive relief because, unless enjoined by this Court, NSI and SCP will continue to infringe upon the SENTINEL Mark and unfairly compete with SENTINEL, thereby causing SENTINEL immediate and irreparable damage for which it has no adequate remedy at law.

## COUNT VI: CONVERSION (NSI, GR AND ANDERSON)

114. The allegations of Paragraphs 1 through 113 above are incorporated by reference as if fully set forth.

115. NSI received approximately $396,000.00 USD in SENTINEL products for which they did not compensate SENTINEL.

116. NSI, though their own negligence, transferred funds to an account unrelated to SENTINEL and never paid SENTINEL for the products provided by SENTINEL.

117.    When asked to resend funds to pay for the $396,000.00 Products NSI, GR and ANDERSON refused to issue a new payment, refused to negotiate and refused to discuss the issue.

118.    When told that NSI could file an insurance claim to satisfy the $396,006.00 USD owed to SENTINEL, NSI, via GR and ANDERSON, refused to file a claim with NSI's insurance carrier.

119.    NSI made profits from the sale of $396,000.00 USD in SENTINEL products while SENTINEL was never compensated for those products. GR and ANDERSON, as executives of NSI, both profited from the conversion of the products from SENTINEL.

120.    To date, to SENTINEL's knowledge. NSI has not filed any insurance claim or reimbursed SENTINEL for the products NSI, GR and ANDERSON took and sold for a profit without compensating SENTINEL.

121.    SENTINEL has been, and continues to be, damaged by NSI, through GR and ANDERSON's conversion of SENTINEL's products.

### COUNT VII: BREACH OF CONTRACT (NSI)

122.    The allegations of Paragraphs 1 through 121 above are incorporated by reference as if fully set forth.

123.    NSI purchased $396,000.00 in SENTINEL products from SENTINEL via a series of purchase orders.

23

124. By accepting the products from SENTINEL, NSI accepted the terms of the purchase order which required NSI to pay SENTINEL within thirty (30) days of receipt of the product.

125. In compliance with the purchase orders, SENTINEL delivered products to Defendants.

126. While NSI attempted to pay SENTINEL and the funds were diverted to a third party, to date, NSI has not paid SENTINEL for any of the product sold under the purchase orders in question.

127. NSI are in breach of the terms of the purchase order.

128. SENTINEL has lost more than $396,000.00 USD due to NSI's breach of the purchase order terms.

129. To date, NSI refuses to pay SENTINEL for the $396,000.00 under the purchase orders in question.

130. SENTINEL has been, and continues to be, damaged by NSI's breach of the purchase order terms.

**WHEREFORE,** Plaintiff, Sentinel Connector Systems, Inc., by counsel, requests the entry of judgment against Defendants, NSI, SCP, GR, and Anderson and requests the following relief:

A. Judgment that the Defendants NSI and SCP have infringed on SENTINEL's registered SENTINEL Mark under § 32(1) of the Lanham Act (15 U.S.C. § 1114) and at common law;

B.    Judgment that the Defendants NSI and SCP have unfairly competed with SENTINEL under § 43(a)(l) of the Lanham Act (15 U.S.C. § 1125(a)(l)) and at common law;

C.    Pursuant to § 34 of the Lanham Act (15 U.S.C. § 1116), that the Defendants NSI and SCP be preliminarily and permanently restrained and enjoined from:

      i.    Using SENTINEL'S registered SENTINEL Mark and/or any other mark, name, designation or likeness that incorporates the SENTINEL Mark may be confusingly similar to the SENTINEL Mark;

      ii.    Otherwise infringing upon the SENTINEL Mark;

      iii.    Unfairly competing with SENTINEL;

D.    Pursuant to § 36 of the Lanham Act (15 U.S.C. § 1118), that the Defendants NSI and SCP are ordered to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements in their possession bearing the SENTINEL Mark, or any designation, description, or representation that is similar to the SENTINEL Mark, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same;

E.    An award of all damages recoverable under Section 35 of the Lanham Act (15 U.S.C. § 1117) including, but not limited to, the Defendant NSI and SCP's profits, a reasonable royalty, all actual damages sustained by SENTINEL, treble profits and damages, reasonable attorneys' fees, and the costs associated with this action;

F.    An award of all damages recoverable for Defendants' conversion of SENTINEL's property.

G.    An accounting of the Defendants NSI and SCP's profits under Section 35 of the Lanham Act (15 U.S.C. § 1117);

H.    An award of all damages from Defendants recoverable under 73 P.S. §§ 201 *et. seq* and Pennsylvania common law, including punitive damages and expenses of litigation (including attorney's fees); and

25

I.    Such other and further equitable and legal relief as the Court deems appropriate.

Date: August 4, 2026

Complaint respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Maria Greco Danaher*
Maria Greco Danaher
PA Bar No. 47036

One PPG Place - Suite 1900
Pittsburgh, PA 15222
Telephone:  412-394-3333
Fax:  412-232-1799
maria.danaher@ogletree.com

Attorney for Plaintiff
Sentinel Connector Systems, Inc.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SENTINEL CONNECTOR SYSTEMS, INC.

Plaintiff,

v.

NSI INDUSTRIES, LLC,
NSI HOLDINGS, LLC,
SENTINEL CAPITAL PARTNERS, LLC,
G.R. SCHROTENBOER, an Individual, and
DAMON ANDERSON, an Individual,

Defendants.

Case No.

**JURY TRIAL DEMANDED**

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August 2026, the foregoing **Plaintiff's Sentinel Connector Systems, Inc., Complaint for Trademark Infringement and Breach of Contract** was electronically filed via the Clerk of Court and is available for viewing and downloading from the ECF system.

*/s/ Maria Greco Danaher*
Maria Greco Danaher